[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: TWO MOTIONS FOR CONTEMPT
Plaintiff brings two (2) Motions for Contempt against defendant. CT Page 2342
In the first motion, dated November 26, 1990, plaintiff seeks an order adjudicating defendant to be in contempt of court for failure to commence soil removal in violation of paragraph 1(D) of a stipulated judgment. Plaintiff seeks penalties for non-compliance.
In the second motion, dated October 25, 1991, plaintiff seeks an order adjudicating defendant to be in contempt of court for failure to complete the activities specified in the "Soil Removal Plan" in violation of paragraph 1(E) of that judgment and seeks penalties from defendant for that noncompliance.
FACTS
On January 16, 1986 plaintiff began this action for violation of its order of August 15, 1983. The parties entered into a stipulation for judgment and on September 10, 1987 the court entered judgment in accordance with that stipulation as follows:
"1. The defendant shall take such actions as follow to eliminate soil contamination resulting from waste disposal activities at 63 Myrtle Avenue, in Stamford, Connecticut:
 A) On or before September 30, 1987, verify to the Commissioner of Environmental Protection that the discharge to the ground has been permanently eliminated.
 B) On or before October 31, 1987, submit for the review and approval of the Commissioner of Environmental Protection an engineering report including, but not necessarily limited to, hazardous waste determinations, a revised contingency plan, and personnel training records.
 C) On or before November 15, 1987, submit for the review and approval of the Commissioner of Environmental Protection an engineering report which defines the extent and degree of contamination and establishes, as necessary, a specific remedial CT Page 2343 action program.
 D) Verify to the Commissioner of Environmental Protection that the procedures and requirements of the engineering report submitted pursuant to Step C have commenced within thirty (30) days after approval by the Commissioner of Environmental Protection.
 E) Verify to the Commissioner of Environmental Protection that the procedures and requirements as approved under Step C have been completed within one month of commencement under Step D.
2. The defendant shall forfeit the sum of $1,000 to the Commissioner of Environmental Protection for each day of wilful non-compliance with the dates specified in paragraph 1. If, despite its good faith efforts, and for reasons beyond the defendant's control, the defendant cannot meet any time schedules in any step, then the time schedules may be extended upon appropriate Motion.
3. The defendant shall pay a forfeiture of $28,000 for its failure to comply with the terms of Order No. 36182 and for its failure to comply with the provisions of Connecticut's Hazardous Waste Order No. HM-75 which forfeiture shall be paid within two years of the entry of judgment as follows:
A) $5,000 on or before September 30, 1987;
B) $5,000 on or before January 31, 1988;
C) $5,000 on or before May 31, 1988;
D) $5,000 on or before September 30, 1988;
E) $5,000 on or before March 31, 1989;
F) $3,000 on or before September 30, 1989.
Should the defendant fail to make payment on or before a scheduled date without permission of the plaintiff, the remaining unpaid balance shall immediately become due and payable.
4. This judgment is entered into to resolve this matter and the matter brought in Pac v. Acme Electro-Plating, Incorporated, docket number CV-85-0308802S.
5. The plaintiff agrees that upon receipt of payment in full as set forth in Paragraph 3 above, to file a Satisfaction CT Page 2344 of Judgment in full and final settlement of the allegations set forth, or which could have been set forth, in its Complaint.
6. The payment by the defendant to the plaintiff of the aforesaid TWENTY-EIGHT THOUSAND ($28,000.00) DOLLARS is not to be deemed or construed as an acknowledgement by the defendant of any fault or wrongdoing by it but rather defendant's election to pay said amount to buy its peace."
Paragraph 1(C) of that judgment required defendant to submit a plan for contaminated soil removal to plaintiff for its approval. Pursuant to said requirement defendant submitted such a plan dated August 1, 1989 and on September 18, 1989, plaintiff approved that plan.
The plan offered by defendant, and approved by plaintiff, provided for the removal of soil in Area A of the site, as set out on Page 4 of the plan, as hazardous waste. It also provided that the Area A soils were to be removed first, placed in lined trailers and transported off the property by a licensed hazardous waste hauler. The materials to be removed from the remaining areas B, C. and D, could be stockpiled on-site and removed within six months of the removal of the Area A hazardous soil. The site for disposal of the soil to be handled as hazardous waste was listed as Peoria Disposal Company (Peoria) in Peoria, Illinois. The soils to be removed from Areas B, C, and D were to be taken to Browning Ferris Industries, Inc. aka BFI Waste Systems (BFI), in Fall River, Massachusetts.
The plan sets out the use of safety gear to offer protection from the health hazards from exposure to cadmium and lead. Equipment used in the soil removal would be decontaminated prior to leaving the site, in accordance with procedures set out in the plan. The removal of the soils was to be followed by sampling to insure that the removal brought the contamination down to levels that do not exceed ten times drinking water standards. Documentation of the "manifests and bills of lading to verify the proper disposal of hazardous or contaminated soils" was to be sent to the plaintiff.
The plan spells out the future use of the areas to be cleaned as storage of equipment for defendant's plating business. Defendant stated that the soil removal "can begin within two weeks of receiving approval from the Department of Environmental Protection."
Robert Sherwood, Jr., (Sherwood, Jr.) is the vice-president of defendant and is its "hands-on" manager. His father, Robert Sherwood, Sr., (Sherwood, Sr.) is the president of defendant CT Page 2345 and he also makes decisions affecting the management of defendant.
Defendant hired York Wastewater Company (YWC) to implement the provisions of the judgment. Ralph Klass (Klass), is employed by YWC and was the primary person at YWC, who worked on the clean-up project for defendant. Klass did not make financial decisions for defendant. Those matters were decided by Sherwood, Jr.
Attorney Saul Rothman (Rothman) was counsel for defendant, until the start of the contempt trial. He instructed Klass to keep the Department of Environmental Protection informed of defendant's activities. As of September 26, 1989, Peoria had a permit from the State of Illinois to receive defendant's waste from Area A. That permit was to expire September 21, 1990. Peoria offered trucking services as well as disposal services. Peoria also could accept the contaminated soils from Areas B, C, and D; that is, there was no legal impediment prohibiting Peoria from handling those soils. Peoria handles non-hazardous as well as hazardous wastes. Klass was looking for less expensive trucking options and he did not ask to dispose of the spoils from Areas B, C, and D at Peoria.
By October 18, 1989, defendant had not verified that it had begun the soil removal. That is thirty (30) days after plaintiff's approval of the plan.
Plaintiff contacted defendant in April 1990 to inquire when defendant was going to begin the soil removal.
Defendant claimed that it intended to begin removal of the soils in the first two weeks in September, 1990. When Sherwood, Jr. was asked why defendant intended to delay the soil removal a year from the date of approval, he referred the question to YWC.
Klass of YWC accounted for the delay in starting the clean-up by stating that he wanted to dispose of both the hazardous and non-hazardous soils at the same time to save money. The court finds that was the purpose of the delay.
Klass was familiar with the terms of the soil removal plan.
The first evidence of another offer for a trucking contract was from Tri-S in November, 1989. Defendant never signed a contract with Tri-S to haul away its soils. There was evidence of inquiries made by YWC to Franklin Environmental Services (Franklin) in November 1989 for transporting the soils. In December, 1989, Franklin offered defendant a contract. Franklin was available to begin removal the first week of CT Page 2346 January, 1990 but defendant never entered into a contract with Franklin.
Klass mentioned other haulers, specifically Wayne Disposal and Chemical Waste and neither was unavailable. Defendant did not hire either of them. None of the haulers contacted said that there would be a one-year delay. Nor was there any proof that no hauler would be available until September, 1990.
Klass received notice from BFI in late December, 1989, that the Commonwealth of Massachusetts considered the soils in Areas B, C and D hazardous wastes and thus would not permit BFI to accept those soils. Klass did not advise defendant to dispose of those rejected contaminated wastes at Peoria. Even when he received advice from a satellite office of YWC in the Midwest, to dispose of all of defendant's waste at Peoria, he still did not make such a recommendation to defendant.
The last contract offer made by Peoria was not signed by defendant. The last contract offer made by Franklin was similarly unsigned. Klass claimed the lack of signed contracts was due to the lack of a disposal site for the contaminated soil.
Without either a signed contract for anyone to haul the soils or to accept the soils, defendant, through Klass, put off beginning the soil removal. Klass estimated the soil removal to be a two-day job. On September 12, 1990 soil removal had not begun. On that date flooding occurred on the property due to construction activities on the nearby highway, I-95. This flooding was not due to any fault of defendant.
Klass first contacted plaintiff by telephone on September 13, 1990 to indicate soil removal would not begin because of the flooding. The activities, he stated, would be delayed until the soils dried out. He did not recommend to defendant that it pump out the water because he claimed such pumping would require plaintiff's approval. The soil could have been dewatered with a filter press.
As of April 15, 1991 no clean-up had begun. Defendant's consultant (Klass), had not contacted the plaintiff's employee, Ploch, who was in charge of the property, since September, 1990. Thereafter, Klass contacted plaintiff on June 3, 1991 to say that soil removal would begin on June 10, 1991.
On June 10, 1991 the soil removal operations began and continued through, and including, June 13, 1991 when the last truckload of soil was removed. CT Page 2347
Acme rented out storage space in its yard, where the soils were to be removed, to Stamford Boat and Motors for three or four winters starting October, 1988. Boats were stored on the soils in Section A, which were to be removed and handled as hazardous waste. Sherwood, Jr. said that he charged $1,100.00 per month for the boat storage. He has received $30,000.00 in rent to date.
Sherwood, Jr. took no steps to warn Stamford Boat Motors or the owners of the boats stored on the defendant's property of the existence of hazardous soil under the boats. Nor did he request a modification of the soil removal plan to allow for decontamination of the boats stored on the contaminated and hazardous soil.
Klass similarly undertook no actions, although he knew that boats were stored on the soils in Section A. He acknowledged that the soil removal plan called for safety equipment and procedures to be employed when the soils were to be removed, yet he neither requested a modification of the soil removal plan nor provided for decontamination of the boats. He did not advise defendant to seek such a modification of the plan.
Defendant did not verify within thirty days of the commencement of the removal that the removal was completed. Ploch wrote Klass on June 14, 1991, of the requirements that defendant dispose of Area A soils as hazardous waste. He stressed that without a modification of the soil removal plan approved by the Department of Environmental Protection, the plan must be implemented as approved. He indicated what kind of specific documentation would be needed to seek a modification. He pointed out the shortcomings of the documentation that Klass had submitted to date.
Ploch received no answer and wrote to Klass again on July 9, 1991. Again he set out the documentation that had to be submitted. There was still no proffered proof that the soils in area A were handled as hazardous waste.
By letter of September 6, 1991, Klass responded to some of Ploch's concerns as set out in Ploch's two letters (Exhibits G and H). Klass wrote that all soils were sent to the BFI landfill in Ohio. There was no documentation submitted that the Ohio BFI site can accept hazardous waste. The summary was not clear as to whether the Area A soils, which were to be disposed of as hazardous waste, were segregated from the rest of the contaminated soils. Klass attached the results of soil samples to his letter. Ploch responded by letter dated September 19, 1991, indicating problems with the removal which he stressed had to be addressed "immediately". CT Page 2348
From the sample results which Klass provided, it was determined that the soils had not been removed down to the level of ten times drinking water sample for lead and cadmium. In Area A, the level of lead and cadmium exceeded the drinking water standards by more than a factor of ten. In Area B, the level of cadmium exceeded the drinking water standard by more than a factor of 30. In the approved plan, removal was to eliminate contamination down to a level of ten times the drinking water standards.
Defendant sought to pave over the backyard of the property and leave the contamination in place. Ploch notified defendant on September 19, 1991, that more removal must occur. Klass responded by letter dated November 8, 1991. He did not provide the documentation which had been requested, but said that another consultant would provide the information when available. By the date of the hearing on the second contempt, on November 25, 1991, such documentation still had not been provided. Klass reiterated defendant's request to leave the additional contaminated soil on-site and pave over it. Ploch responded to Klass' letter of November 8, 1991 by letter of November 20, 1991, that the soil removal plan was never modified, thus removal had to and must continue to be undertaken in accordance with the approved removal plan and therefore, more removal, including in Area A, the soils to be handled and disposed of as hazardous waste, must be undertaken. As of the close of the hearing, the removal of Area A soils had not been completed. Sampling must be provided to the plaintiff, after that final removal occurs and prior to the paving of the yard.
Defendant must provide documentation regarding BFI's authority to receive defendant's hazardous waste; a record of the volume of soils shipped offsite; and an explanation for discrepancies in shipping labels that were sent to the plaintiff.
I. Re Motion of November 26, 1990
It has been proven by clear and convincing evidence that defendant wilfully has failed to comply with paragraph 1(D) of the judgment from October 18, 1989 thru September 11, 1990 and from May 22, 1991 thru June 10, 1991. That is a total of 347 days.
Under paragraph 2 of the judgment "defendant shall forfeit the sum of $1,000 to the Commissioner of Environmental Protection for each day of wilful non-compliance with the dates specified in paragraph 1." CT Page 2349
The dates for compliance could be extended "[i]f, despite its good faith efforts, and for reasons beyond its control, the defendant cannot meet any time schedules in any step . . . upon appropriate Motions." No such motion was ever filed.
The defendant is found in contempt and is ordered to pay the sum of $53,500 to plaintiff.
II. Re Motion of October 25, 1991
It has been proven by clear and convincing evidence that defendant wilfully has failed to comply with paragraph 1(E) of the judgment from July 14, 1991. The soil removal plan was to have been completed and such completion verified to the plaintiff by July 10, 1991. As of November 25, 1991, it had not been verified as complete. That is a period of 138 days.
The defendant is found in contempt and is ordered to pay $29,000.00.
The court has considered in regard to both motions the small pecuniary income to defendant; the saving of expenses; the defendant's record of non-compliance in this case including the length of the violations and their seriousness; the efforts made to comply; the fact that defendant is not a large business; the state resources used for the enforcement action; and the danger to the general public that the legislature sought to protect against. The court has found nothing to indicate that payment of this sum will affect defendant's ability to continue in business.
Judgment for plaintiff for $82,500.00.
NORRIS L. O'NEILL JUDGE, SUPERIOR COURT